**Thomas P. Smith, Jr.**
**Sandeep Satwalekar**
**Alexander Vasilescu**
**William T. Conway III**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**100 Pearl Street**
**Suite 20-100**
**New York, NY 10004-2616**
**212-336-0178 (Vasilescu)**
vasilescua@sec.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> -against- <br><br> GIOVANNI PENNETTA, <br><br> Defendant. | **COMPLAINT** <br> **26 Civ. _____** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Giovanni Pennetta ("Pennetta" or "Defendant"), alleges as follows:

**SUMMARY**

1.      This action concerns false representations made by Pennetta about his access to shares of the private company, Anduril Industries, Inc. ("Anduril"), to investors who invested over $10.5 million in the private fund NextGenTech Investments LLC ("NextGenTech"). Instead of using the investor funds to purchase Anduril stock, Pennetta, who managed NextGenTech through the exempt reporting adviser Sestante Capital LLC ("Sestante"), misappropriated over $6.2 million for his personal use and to repay an investor in a separate NextGenTech offering.

2.      From February 2021 through December 2025, Pennetta solicited at least 6 investors

looking for economic exposure to Anduril and convinced them to invest over $10.5 million in NextGenTech based on false representations that he or the companies under his control owned or had access to Anduril shares. In fact, neither Pennetta nor his companies ever held or had access to Anduril shares, and none of the investor funds were used to purchase Anduril stock.

## VIOLATIONS

3. By virtue of the foregoing conduct and as alleged further herein, Defendant Pennetta has violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1), (2) and (4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), (2) and (4)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

4. Unless Pennetta is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of a similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

5. The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)], Exchange Act Section 21(d) [15 U.S.C. § 78u(d)] and Advisers Act Section 209(d) [15 U.S.C. § 80b-9(d)].

6. The Commission seeks a final judgment: (a) permanently enjoining Pennetta from violating the federal securities laws and rules this Complaint alleges he violated; (b) ordering Pennetta to disgorge all ill-gotten gains he received as a result of the violations alleged herein and to pay pre-judgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; (c) ordering Pennetta to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)], Exchange Act Section

2

21(d)(3) [15 U.S.C. § 78u(d)(3)] and Advisers Act Section 209(e) [15 U.S.C. § 80b-9(e)];

(d) permanently enjoining Pennetta from, directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Pennetta from purchasing or selling securities for his own personal account; and (f) granting any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)], Exchange Act Section 27 [15 U.S.C. § 78aa], and Advisers Act Section 209(d) [15 U.S.C. § 80b-9(d)].

8. Pennetta, directly and indirectly, made use of the means or instruments of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this Complaint.

9. Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)], Exchange Act Section 27 [15 U.S.C. § 78aa], and Advisers Act Section 214 [15 U.S.C. § 80b-14]. Pennetta resided in and transacted business in the Southern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including soliciting, offering, and selling securities to investors and maintaining an office in the District.

## DEFENDANT

10. **Pennetta**, age 50, is a resident of New York, New York and Managing Member and Chief Investment Officer of Sestante. On March 5, 2026, Pennetta pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 before the United States District Court for the Southern District of New York in *United States v. Pennetta*, 25-cr-577 (JSR). The count of the criminal

indictment to which Pennetta pleaded guilty alleged that Pennetta intentionally devised a scheme and artifice to defraud clients of NextGenTech by falsely claiming that he had access to shares of private companies and that his clients could get economic exposure to those shares by purchasing membership interests in NextGenTech.

## OTHER RELEVANT ENTITIES

11.     **Anduril**, founded in 2017 as a Delaware corporation, is a private company that specializes in artificial intelligence and defense technology.

12.     **NextGenTech**, formed in 2018 as a Delaware series limited liability company, is a private fund that is managed by Sestante and purports to invest in shares in pre-IPO companies.

13.     **Sestante,** formed in 2017, is a Delaware limited liability company with its principal office and place of business in New York, New York. According to its most recent Form ADV dated December 6, 2024 ("Form ADV"), Sestante is an exempt reporting adviser with $83 million in assets under management through its private fund, NextGenTech. Sestante's securities are not registered with the Commission.

14.     **Westbourne Single Family Private Management Company, LLC** ("Westbourne"), formed in 2017, is a Delaware limited liability company that manages Pennetta's family trust. Westbourne's bank accounts were used by Pennetta to misappropriate NextGenTech investor funds. Westbourne's bank records describe Pennetta as the company's "key executive with control of the entity" and identify him as sole signatory of its bank accounts.

## FACTS

**I.     Background on Pennetta, Sestante and NextGenTech**

15.     Pennetta has at all times been Sestante's Managing Member and, pursuant to the terms of NextGenTech's Limited Liability Company Master Operating Agreement ("Operating Agreement"), Sestante has served as NextGenTech's Manager. As Sestante's Managing Member,

Pennetta had complete control over NextGenTech, including sole control over the fund's investment decisions and bank accounts.

16.    Investors in NextGenTech, which is a series limited liability company, were each given a full membership interest in separate fund series – *e.g.,* "NextGenTech Investments LLC - Series 999" – that were, pursuant to the "Series Schedule" to the Operating Agreement, formed to acquire, hold and dispose of shares in a single private company, such as Anduril, in which they wanted to invest.

17.    The Form ADV characterized NextGenTech as a private fund that is excluded from the definition of an investment company under Section 3(c)(7) of the Investment Company Act of 1940.

18.    Pennetta pooled investor funds in NextGenTech's bank account prior to engaging in any of the transactions or investments discussed below.

19.    Pennetta represented to investors that NextGenTech would charge a fee for his and Sestante's services, including their efforts to purchase Anduril shares.

20.    Interests in NextGenTech are investment contracts and therefore constitute securities. NextGenTech investors invested their money in the common enterprise of NextGenTech and expected to profit solely from the efforts of Pennetta, exercising no managerial control themselves. Investors would share in any profits in proportion to their ownership in NextGenTech. Further, investors had reasonable expectations that profits would be derived from the efforts of others, namely Pennetta's efforts to purchase Anduril shares.

## II.    Pennetta Lied About Both Owning and His Ability to Acquire Anduril Shares

21.    In February 2021, Pennetta began soliciting investors for the opportunity to invest in Anduril, whose private stock had been highly sought but difficult to obtain. Since that time, Pennetta fraudulently raised a total of approximately $10.5 million from at least six investors,

5

including three in the United States, who he duped into believing that their NextGenTech investment provided them with economic exposure to Anduril stock.

22.    In reality, Pennetta and the companies that he controlled, including NextGenTech and Sestante, never purchased, owned or controlled Anduril stock, and have never appeared on Anduril's capitalization table.

23.    In order to attract investors, Pennetta falsely represented to them that: (1) he had a relationship with certain Anduril founders and employees that gave him access to the company's stock; (2) he and his companies owned or had access to Anduril shares; and (3) that NextGenTech and/or other entities controlled by Pennetta were on Anduril's capitalization table, all of which were untrue because neither Pennetta nor his companies ever owned an equity interest in Anduril.

24.    Pennetta also doubled down on these lies by sending the investors falsified or doctored documents, such as a stock purchase agreement and bank statements, that purported to serve as NextGenTech's proof of ownership of Anduril shares.

25.    For example, in February 2023, Pennetta represented to investment managers of Investor A, a Delaware-based private investment fund, that NextGenTech held Anduril shares and that it would be willing to sell some of its shares directly to Investor A. Pennetta told Investor A representatives that the sale of its Anduril shares would be completed in a two-step process whereby Investor A would first purchase a membership interest in NextGenTech and then later NextGenTech would transfer some of its Anduril shares to Investor A.

26.    Multiple phone calls and meetings occurred that month in which Pennetta assured Investor A representatives that NextGenTech held shares of Anduril. During these discussions, Pennetta also represented to Investor A representatives that he had spoken to one of Anduril's founders and had gotten permission to disburse some of NextGenTech's Anduril shares to one of its investors, Investor A.

6

27.     In reliance on Pennetta's representations that NextGenTech owned Anduril shares, on February 28, 2023, Investor A transferred $3 million to NextGenTech's bank account for purposes of acquiring exposure to Anduril through the purchase of a membership interest in NextGenTech.

28.     Then in June 2024, after 16 months of failing to redeem Investor A's NextGenTech membership interest by disbursing the Anduril shares to Investor A or provide proof of NextGenTech's ownership of Anduril shares, Pennetta sent Investor A multiple fictitious documents, including a doctored December 2022 agreement between NextGenTech and Anduril that falsely showed Anduril's transfer of its shares to NextGenTech. In fact, no Anduril stock was ever transferred to NextGenTech.

29.     Similarly, in December 2024, Investor B, a New York-based investor, and his mother, Investor C, who resided in Luxembourg, had a telephone conversation with Pennetta to discuss their family's interest in acquiring Anduril shares.

30.     Pennetta told Investors B and C that he had a relationship with some of Anduril's founders and that, because of that relationship, he and his fund, NextGenTech, owned shares in Anduril.

31.     To substantiate this claim, Pennetta later sent Investors B and C a doctored screenshot from a software platform that hosts capitalization tables for private companies that falsely showed NextGenTech's ownership of nearly 3 million Anduril shares.

32.     On December 11, 2024, based on Pennetta's misrepresentations about NextGenTech's ownership of Anduril shares, Investor C wired $1.15 million to NextGenTech's bank account believing she was acquiring an investment exposure to Anduril through the purchase of a membership interest in NextGenTech.

33.     Shortly after making that investment and through November 2025, Pennetta reached

7

out to Investor B on at least five more occasions falsely claiming that NextGenTech could acquire additional Anduril shares, even though neither he nor the companies under his control ever purchased, owned or had access to Anduril stock.

34.     As a result of these subsequent solicitations of her son, Investor B, and false belief that NextGenTech owned Anduril shares, Investor C made two additional investments in NextGenTech to acquire exposure to Anduril on December 19, 2024 ($250,000) and February 28, 2025 ($1.5 million) totaling $1.75 million.

35.     In addition, in February 2021, two non-U.S. based investors, Investors D and E, each purchased $400,000 in membership interests in NextGenTech based on Pennetta's oral representations to them that NextGenTech would be acquiring Anduril shares.

36.     Pennetta later provided Investors D and E with a doctored bank statement that falsely showed that their two $400,000 wires into NextGenTech's bank account were immediately transferred to one of Anduril's employees.

37.     In reality, none of these investors' funds were sent to the Anduril employee or were otherwise used to purchase Anduril shares or obtain any other type of economic exposure to the company.

38.     In 2025, Pennetta represented to Investor F, an individual from Columbus, Ohio, that he would acquire investment exposure to Anduril through the purchase of a membership interest in NextGenTech, which owned Anduril shares. On April 3, 2025, Investor F wired $3 million to NextGenTech's bank account and, on May 22, 2025, sent another $60,000 to the same account as payment of a fee to NextGenTech.

### III.    Pennetta's Misuse and Misappropriation of Investor Funds

39.     Pennetta did not use any of the $10.5 million invested in NextGenTech by the six investors to acquire Anduril stock and instead misappropriated $6.2 million of these investor funds

for other purposes, including to pay for his personal expenses such as vacations, luxury fashion items and ATM withdrawals.

40. Specifically, Pennetta (a) transferred over $4.25 million of the investor funds from NextGenTech's bank account to his personal bank accounts for his personal use, and (b) used over $1.96 million of investor funds to repay an investor in a separate NextGenTech offering.

41. Pennetta spent the remaining approximately $4.3 million in investor funds on Sestante's business expenses, such as legal fees, taxes, postage, telecommunications, office leasing, data research and information technology.

42. Further, none of the $10.5 million raised by Pennetta for Anduril investments has been returned to NextGenTech or its investors, nor have they received Anduril stock.

43. For example, after Investor A wired $3 million to NextGenTech's bank account on February 28, 2023, Pennetta transferred $160,000 of those funds to his personal bank account later that same day. Then, between February 28, 2023 and May 30, 2023, Pennetta transferred $1,007,000 from the NextGenTech account directly to his personal bank accounts or to the Westbourne account and then to his personal bank accounts. Finally, on May 2, 2023, Pennetta transferred $600,000 of Investor A's funds to NextGenTech's brokerage account.

44. Trading in the brokerage account was profitable and, from June 13, 2023 to August 31, 2023, Pennetta transferred Investor A's $600,000 plus trading profits of $315,000 to his personal bank accounts via the NextGenTech bank account. None of the trading was in Anduril stock. NextGenTech's agreements with its investors did not permit Pennetta to use their funds to trade other securities. In total, Pennetta transferred over $1.7 million of Investor A's $3 million from NextGenTech's bank account to his personal bank accounts for his personal benefit and did not invest any of Investor A's funds in Anduril stock.

45. Similarly, within 3 weeks of Investor C's February 28, 2025 wire of $1.5 million of

9

investment funds to NextGenTech's account, Pennetta misappropriated $877,000 of these funds for his personal use. None of the remaining funds invested by Investor C, including her December 19, 2024 deposit of $250,000, were used to acquire Anduril shares and appear to have been spent on Sestante's business expenses.

46.     Between April 3 and April 8, 2025, Pennetta transferred $1,025,000 of Investor F's funds through the Westbourne bank account to his personal bank account.  Additionally, on April 4, 2025, Pennetta transferred $1,967,067 of Investor F's funds through the Westbourne bank account as a redemption payment to a different investor in a separate NextGenTech offering.

## FIRST CLAIM FOR RELIEF
### Violations of Securities Act Section 17(a)

47.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 46.

48.     Pennetta, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly has employed one or more devices, schemes, or artifices to defraud, (2) knowingly, recklessly, or negligently has obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently has engaged in one or more transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchaser.

49.     By reason of the foregoing, Pennetta, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

10

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

50.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 46.

51.     Pennetta, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

52.     By reason of the foregoing, Pennetta, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
### Violations of Advisers Act Sections 206(1) and (2)

53.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 46.

54.     At all relevant times, Pennetta was an investment adviser within the meaning of Advisers Act Section 202(a)(11) [15 U.S.C. § 80b-2(a)(11)].

55.     By engaging in the acts and conduct described in this Complaint, Pennetta, while acting as an investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, has: (i) knowingly or recklessly employed one or more devices, schemes, or artifices to defraud any client or prospective client, and/or (ii) knowingly, recklessly, or negligently engage in one or more transactions, practices, and courses of business which operated or

11

would operate as a fraud or deceit upon any client or prospective client.

56.     By reason of the foregoing, Pennetta, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Advisers Act Sections 206(1) and (2) [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

**FOURTH CLAIM FOR RELIEF**
**Violations of Advisers Act Section 206(4) and Rule 206(4)-8 Thereunder**

57.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 46.

58.     At all relevant times, Pennetta was an "investment adviser" within the meaning of Advisers Act Section 202(a)(11) [15 U.S.C. § 80b-2(a)(11)].

59.     At all relevant times, NextGenTech was a "pooled investment vehicle" as defined in Rule 206(4)-8(b) [17 C.F.R. § 275.206(4)-8(b)].

60.     Pennetta, while acting as an investment adviser to a pooled investment vehicle, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, engaged in acts practices, or courses of business which were fraudulent, deceptive, or manipulative. Pennetta, directly or indirectly, knowingly, recklessly, or negligently: (a) made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to investors or prospective investors in a pooled investment vehicle; or (b) engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in a pooled investment vehicle.

61.     By reason of the foregoing, Pennetta, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Advisers Act Section 206(4) [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Pennetta, servants, employees, and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Advisers Act Sections 206(1), (2) and (4) [15 U.S.C. §§ 80b-6(1), (2) and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

### II.

Permanently enjoining Pennetta from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security pursuant to Securities Act Section 20(b) [15 U.S.C. § 77t(b)], Exchange Act Sections 21(d)(1) and 21(d)(5) [15 U.S.C. §§ 78u(d)(1) and 78u(d)(5)], and Advisers Act Section 209(d) [15 U.S.C. § 80b-9(d)]; provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own personal account.

### III.

Ordering Pennetta to disgorge all ill-gotten gains they received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(3), (d)(5), and (d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)].

### IV.

Ordering Pennetta to pay civil monetary penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)], Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)], and Advisers Act Section 209(e) [15 U.S.C. § 80b-9(e)].

## V.

Granting any other and further relief the Court may deem just and proper.

## JURY DEMAND

The Commission demands a trial by jury.

Dated: New York, New York
     June 22, 2026

                              /s/ Alexander Vasilescu
                              Alexander Vasilescu
                              Thomas P. Smith, Jr.
                              Sandeep Satwalekar
                              William T. Conway III
                              Attorneys for Plaintiff
                              SECURITIES AND EXCHANGE COMMISSION
                              New York Regional Office
                              100 Pearl Street
                              Suite 20-100
                              New York, NY 10004-2616
                              212-336-0178 (Vasilescu)
                              vasilescua@sec.gov

14