UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff, -v- GIOVANNI PENNETTA, Defendant. | : | 26-CV-5209 (JAV) MEMORANDUM OPINION AND ORDER |

JEANNETTE A. VARGAS, United States District Judge:

The Securities and Exchange Commission (the "S.E.C." or the "Commission") brings this action against Defendant Giovanni Pennetta for alleged violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, and Sections 206(1), (2) and (4) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1), (2) and (4), and Rule 206(4)-8 thereunder. Before the Court is the parties' letter motion to approve a proposed consent judgment. For the reasons set forth below, the motion is granted and the proposed consent judgment is approved.

**BACKGROUND**

The Complaint alleges that Pennetta was a Managing Member and Chief Investment Officer of Sestante Capital LLC ("Sestante"). ECF No. 1, ¶ 10. Sestante served as the Manager of private fund NextGenTech Investments LLC ("NextGenTech"). *Id.*, ¶ 12. Investors in NextGenTech, which is a series limited

liability company, were each given a full membership interest in separate fund series that were, pursuant to the “Series Schedule” to the Operating Agreement, formed to acquire, hold and dispose of shares in a single private company in which they wanted to invest. *Id.*, ¶ 16. Interests in NextGenTech are investment contracts and therefore constitute securities. *Id.*, ¶ 20.

Beginning in February 2021, Pennetta began soliciting investors in NextGenTech by making false representations about his access to shares of the private company, Anduril Industries, Inc. (“Anduril”). *Id.*, ¶ 21. Anduril ‘s private stock had been highly sought but difficult to obtain. *Id.*

Pennetta fraudulently raised a total of approximately $10.5 million from at least six investors, including three in the United States, who he deceived into believing that their NextGenTech investment provided them with economic exposure to Anduril stock. *Id.* In fact, neither Pennetta nor his companies ever held or had access to Anduril shares, and none of the investor funds were used to purchase Anduril stock. *Id.*, ¶ 22. Instead of using the investor funds to purchase Anduril stock, Pennetta misappropriated over $6.2 million to pay for his personal expenses, including vacations and luxury fashion items, and to repay an investor in a separate NextGenTech offering. *Id.*, ¶ 39-40.

On March 5, 2026, Pennetta pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 before the United States District Court for the Southern District of New York. *United States v. Pennetta*, 25-cr-577 (JSR).

## LEGAL STANDARDS

The Second Circuit "recognizes a strong federal policy favoring the approval and enforcement of consent decrees." *S.E.C. v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 293 (2d Cir. 2014) (internal quotation marks omitted). With respect to a proposed consent judgment involving an enforcement agency, a court must "determine whether the proposed consent decree is fair and reasonable." *Id.* at 294. The Court evaluates whether a proposed consent decree is fair and reasonable by assessing "(1) the basic legality of the decree, (2) whether the terms of the decree, including its enforcement mechanism, are clear, (3) whether the consent decree reflects a resolution of the actual claims in the complaint, and (4) whether the consent decree is tainted by improper collusion or corruption of some kind." *Id.* at 294-95 (cleaned up). "The primary focus of the inquiry, however, should be on ensuring the consent decree is procedurally proper, using objective measures similar to the factors set out above, taking care not to infringe on the [enforcement agency's] discretionary authority to settle on a particular set of terms." *Id.* at 295.

If the consent decree contains an injunctive provision, the Court must additionally consider whether "the public interest would not be disserved" by entry of an injunction. *Id.* at 296. "The job of determining whether the proposed S.E.C. consent decree best serves the public interest, however, rests squarely with the S.E.C., and its decision merits significant deference." *Id.* at 296.

A court must enter a proposed consent judgment involving an enforcement agency "[a]bsent a substantial basis in the record for concluding that the proposed consent decree does not meet these requirements." *Id.* at 294.

**DISCUSSION**

Applying the *Citigroup* factors to the proposed Consent Judgment, the Court concludes that its terms are fair and reasonable. Moreover, the public interest would not be disserved by entry of the proposed injunctive provisions.

The proposed Consent Decree permanently enjoins Pannetta, his officers, agents, servants, employees, and attorneys, and other persons in active concert or participation from violating Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and Sections 206(1), (2) and (4) of the Advisers Act. *See generally* ECF No. 4. The proposed Consent Judgment further provides that, upon motion of the Commission, the Court will determine whether to order disgorgement or impose a civil penalty, and the amount of such disgorgement or penalty. *Id.* In connection with any such motion, Defendant will be precluded from arguing that he did not violate the federal securities laws. *Id.*

"A proposed consent judgment with the U.S. government is legal as long as the court has authority to enter the judgment and the plaintiff has authority to enforce it." *S.E.C. v. Xia*, No. 21-CV-5350 (PKC) (JAM), 2024 WL 3592170, at *5 (E.D.N.Y. July 26, 2024). The Commission "plainly" has the authority to enforce the Advisers Act, the Securities Act, and the Exchange Act by seeking injunctive relief, disgorgement, and civil penalties. *See, e.g.*, *S.E.C. v. A.G. Morgan Fin. Advisors, LLC*, No. 22-CV-3421 (NJC) (ST), 2026 WL 1983329, at *2 (E.D.N.Y. July 9, 2026); *Xia*, 2024 WL 3592170 at *5-6; *see also* 15 U.S.C. § 77t(b) ("Whenever it shall appear to the [S.E.C.] that any person is engaged or about to engage in any acts or

practices which constitute or will constitute a violation of the provisions of [the Securities Act], the [S.E.C.] may, in its discretion, bring an action in any district court . . . to enjoin such acts or practices[.]"); 15 U.S.C. § 78u(d)(1) ("Whenever it shall appear to the [S.E.C.] that any person is engaged or is about to engage in acts or practices constituting a violation of [the Exchange Act], it may in its discretion bring an action in the proper district court . . . to enjoin such acts or practices[.]")); 15 U.S.C. § 80b-14 (authorizing the Commission to enforce the Advisers Act through actions in federal court seeking injunctive relief).

The proposed Consent Judgment is sufficiently clear as to terms, as it states specifically to whom the injunctive relief provisions apply, and the responsibilities and obligations imposed. *Xia*, 2024 WL 3592170 at *6 (collecting cases). The proposed Consent Decree also satisfies *Citibank*'s requirement that it reflects a resolution of the actual claims in the Complaint. *See United States v. New York City Hous. Auth.*, 347 F. Supp. 3d 182, 205 (S.D.N.Y. 2018) ("It should be uncontroversial . . . that a proposed consent decree in an SEC enforcement case that grants disgorgement and enjoins a defendant from violating the federal securities laws clearly reflects a resolution of claims brought under the anti-fraud provisions of those statutes.").

There is nothing on this record to suggest collusion between the parties. To the contrary, this factor must be viewed in light of the fact that Defendant pled guilty to related criminal charges.

Finally, the public interest would not be disserved by the entry of an injunction prohibiting Defendant from future violations of the federal securities laws. "Courts in this Circuit have approved consent judgments when the judgments do not bar private litigants from pursuing their own claims independent of the relief obtained under the consent decree or when no participants in the proceeding have set forth a legitimate basis for concluding that the consent decree would harm the public." *Xia*, 2024 WL 3592170, at *9. The Court has received no objection to entry of the proposed Consent Decree. And the Consent Decree does not prevent private litigants, such as defrauded investors, from bringing a damages action against Defendant based on substantially the same facts as alleged in the Complaint. *See Citigroup*, 752 F.3d at 294.

**CONCLUSION**

For the foregoing reasons, the Court approves the proposed Consent Judgment.

SO ORDERED.

Dated: August 31, 2026
New York, New York

Jeannette Vargas
JEANNETTE A. VARGAS
United States District Judge